HOWARD CURTIS SHEPARD, appellee, v. MARGARET (SHEPARD) GERHOLDT, appellant.

No. 48350.

(Reported in 60 N.W.2d 547)

OCTOBER 20, 1953.

C. Glenn Garten, Xen Q. Lindel and Wm. B. Garten, all of Des Moines, for appellant.

Alexander, Ryan & Merryman, of Des Moines, for appellee.

THOMPSON, J.—Plaintiff and defendant were married on January 19, 1937. Two daughters were born to them—Marsha Jane, on October 2, 1937, and Diana Rae, on October 14, 1943. On January 7, 1949, the district court of Polk County entered a decree granting plaintiff a divorce from defendant. Defendant was given the custody of the two minor children, with rights of visitation granted the plaintiff. Shortly thereafter each party married again.

On January 10, 1950, plaintiff filed an application to modify the decree of divorce so as to give him custody of both daughters. This resulted, on February 18, 1950, in a supplemental decree transferring custody of Marsha Jane to plaintiff, but denying his application as to Diana Rae. They will be referred to hereinafter as Marsha and Diana. It was provided, however, that defendant should have custody of Marsha for six weeks during the summer school vacation and one week at Christmas, with plaintiff having similar rights as to Diana.

A second application to modify was made by the plaintiff on September 25, 1952, and it is the court's ruling thereon which has brought about the present appeal. This application again asked plaintiff be given custody of Diana, and that the former provision giving defendant custody of Marsha during the summer and Christmas vacations be eliminated. The prayer of this application was granted and a second supplemental decree entered accordingly on December 18, 1952. No question is raised on the appeal as to that part of the decree concerning Marsha, the complaint being only as to the order transferring custody of Diana.

The defendant-appellant states two major issues on which it is asserted the trial court was in error in its rulings: (1) The record fails to show it was for the best interest of Diana that her custody be changed, her welfare being superior to the claims of either parent; and (2) a substantial change in circumstances since the previous decree must be shown, and there is no such showing here. We shall discuss the second alleged error first.

I. That there must be shown some change in circumstances before a decree of divorce may be modified under the provisions

of section 598.14, Code of 1950, is well settled. Paintin v. Paintin, 241 Iowa 411, 415, 41 N.W.2d 27, 29, 16 A. L. R.2d 659, and cases cited. We set out section 598.14 herewith:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

"Subsequent changes may be made by it in these respects when circumstances render them expedient."

■ The power of the court to modify exists only when there has been a material and substantial change in circumstances since the date of the original decree, or of any subsequent intervening proceeding which considered the situation and rights of the parties upon an application for the same relief. Thus, in the case at bar, the showing must be of a change in circumstances since the time of the supplemental decree upon the first application for modification, which was February 18, 1950. At that time it was adjudicated that Diana should remain in the custody of her mother. The burden here is upon the plaintiff to show a substantial change in circumstances since that date, warranting a different holding.

■ It is of course elementary that the best interest of the child is of primary importance. We have held the welfare of the child is important upon the question of expedience. "We have many times held * * * that the welfare and best interest of the child are fundamental and paramount considerations. It is a prime factor on the issue of expedience." Beyerink v. Beyerink, 240 Iowa 45, 49, 35 N.W.2d 458, 460. It is equally basic that it is incumbent upon the applicant who wishes the court to amend the decree to assume and carry the burden of showing a change of circumstances and that such change so affects the welfare of the child as to require a modification. Paintin v. Paintin; Beyerink v. Beyerink, both supra; Morrison v. Morrison, 208 Iowa 1384, 1386, 227 N.W. 330, 331.

The law is settled. Each of these cases must depend upon its own facts. The defendant here contends there has been shown no substantial change in circumstances warranting the modification made by the trial court. We have pointed out such change

must relate to the period between the supplemental decree of February 18, 1950, and the filing of the second application on September 25, 1952. In this time there was evidence of frequent quarreling between defendant and her then husband, with profanity on his part and some beatings, or at least blows, administered by Gerholdt to her. On one occasion, in the summer of 1952, when Marsha was present at the Gerholdt home, a quarrel developed into an affray in which Gerholdt struck both the defendant and Marsha, when the latter attempted to come to the rescue of her mother. This resulted in the filing of a charge of assault and battery by Marsha, to which Gerholdt pleaded guilty and for which he paid a fine. Diana was present when this trouble occurred, and, according to Marsha, profanity and quarreling were frequent in the presence of both of the daughters. Plaintiff and his present wife say Diana was nervous each time she came to visit them.

Marsha also testified that Gerholdt, in the presence of both the children, would speak of their father, the plaintiff, with profanity, using words which she did not like to repeat. None of these things were denied by the defendant, who took the stand as a witness for herself; nor by her husband, Gerholdt, upon direct examination. On cross-examination Gerholdt denied the use of profanity in speaking of plaintiff, but he said: "Q. You never made any remarks about him at all? A. Well, I might have made some remarks. I suppose he does, too, about me."

The evidential situation is such that we must hold the conduct of the defendant's second husband, with whom she lives and with whom Diana must live if she is to be retained in her mother's custody, amounts to an attempt to discredit the plaintiff in the eyes of his daughters, to teach them to dislike and distrust him. This, together with the record of profanity, of quarreling and fighting, shows a sufficient change of circumstances to justify the modification made by the court. We said, in Albertus v. Albertus, 178 Iowa 1124, 1127, 160 N.W. 830:

"If the present custodians are schooling the child to hate the father * * * the welfare of the child might require a change of custody * * *. It would be a sufficient change of circumstances

* * * if this alleged animosity * * * were not in existence when the original decree was entered."

In Paintin v. Paintin, supra, 241 Iowa at pages 415, 416, we said: "It is not shown the mother * * * has attempted to turn them against their father * * *." The inference is that this might be a sufficient change of circumstances. See also Sherwood v. Sherwood, 56 Iowa 608, 610, 10 N.W. 98.

The record further shows the plaintiff has a modern home in Des Moines, while the defendant and her husband were living in a small tenant house on a farm near Hudson, in Black Hawk County, which consisted of a living room, a bedroom, and a kitchenette. Diana, and Marsha when she was there, slept in the living room, through which their mother and stepfather must pass to reach their bedroom. Of course, which parent has the more luxurious home is not of decisive weight in these matters, and on the question of change in circumstances we are not told whether the same conditions existed on February 18, 1950, or if there has been a change since then. On the whole, however, we think the weight of the evidence shows a sufficient change in circumstances, in the matter of the quarreling, profanity, and blows struck in defendant's home, and in the reprobation of the plaintiff by defendant's husband, Gerholdt, to support the finding of the trial court on this point.

II. Once we have passed the point of finding there was a sufficient change in circumstances, we come to the question of the welfare of the child. In fact the two issues are closely intertwined. Changed circumstances are not important unless they show sufficient to enable the court to say the best interest of the child requires a change of custody. Since the first decree of the court is final as to conditions then existing, it is only the subsequent changes which justify the court in decreeing a different order concerning custody. We have set out above the material factors which we think justify the order made by the district court. There was, in addition to those mentioned, a very material factor concerning welfare which the court stressed— the affection between the two sisters, Marsha and Diana, and the benefit to Diana from living with the elder girl. The court

pointed out it is now impossible for Marsha to spend any time with her mother in the latter's home because of the ill feeling engendered between her and her stepfather. So, if the girls are to be together at all under the pre-existing arrangement, it could be only in the limited times Diana could visit her father and stepmother. We agree with the able and long-experienced trial court that the welfare of Diana will be best promoted by a modification which permits her to live in the same home with her sister. Of course, it may be argued she also needs a mother's love and care, and this cannot be denied. But in view of conditions in the mother's home, particularly with reference to the conduct of her husband, we conclude this consideration is overcome by those pointed out above, which seem to indicate Diana's best interest will be served by the modification as made. It is not possible in these matters to deal with certainties; the courts can only reason from human experience where the probabilities lie, and rule accordingly.

 III. To some extent, and if it appears the trial court has followed proper rules of law and has considered only competent and material evidence, weight will be given to its findings. Kuyper v. Kuyper, 244 Iowa 1, 4, 55 N.W.2d 485, 486; Maron v. Maron, 238 Iowa 587, 591, 28 N.W.2d 17, and cases cited. Its decision is not final, but will be duly credited under the rule above set forth even though the case is triable de novo. The decree of the district court, with its findings of fact, supports the conclusions we have reached.

 IV. There appears in the printed record a somewhat lengthy report of the Juvenile Probation Office of Black Hawk County upon an investigation made by it of the home of defendant and her husband and of the parties living therein. This report is dated November 15, 1952. With it is a covering letter from the chief probation officer under the same date. Both the letter and the report are highly favorable to defendant, to the point where they seem to amount to special pleading. Defendant relies considerably upon these in argument. There is no showing how these papers got into the record, except the covering letter says the report was requested by the trial judge, and the plaintiff-appellee says in his argument: "The trial court based

its ruling on three categories of evidence: * * * (3) reports of social workers. The parties stipulated to the second and third procedures." There is no showing of the stipulation in the record, and no offer in evidence either of the report or letter appears. They are not referred to in the findings of fact or decree of the district court, and it is evident it gave little if any weight to either of them. Both the findings and decree are adverse to the report and letter.

Conceding, arguendo only, that the report was properly in evidence, at best we can give only the slightest consideration to it. It is entirely hearsay, with hearsay on hearsay and opinions and conclusions likewise based on hearsay. It contains purported statements and opinions of various persons who were interviewed, and whose unsworn testimony is thus sought to be introduced into the record with no opportunity for either party to examine or cross-examine. Such evidence, if evidence it is, has no probative force in a court of law. 32 C. J. S., Evidence, sections 1034–1036, pages 1077–1079; Denniston & Partridge Co. v. Romp, 244 Iowa 204, 210, 56 N.W.2d 601, 604; Sinift v. Sinift, 229 Iowa 56, 71, 293 N.W. 841, 850. The value of such a report to a court which must try a case by legal procedures and by competent evidence is not apparent.

We find the supplemental decree of the district court to be in accord with the facts and the applicable law.—Affirmed.

All JUSTICES concur.