ANN SHULER CHASE, appellee, v. ALBERT MABIS CHASE, appellant.

No. 51060.

(Reported in 124 N.W.2d 168)

OCTOBER 15, 1963.

Gibson, Stewart & Garrett, of Des Moines, for appellant.

Brunk, Janss & Dreher and Dickinson, Throckmorton, Parker, Mannheimer & Raife, all of Des Moines, for appellee.

THOMPSON, J.—This case represents a continuation of controversies first arising, but not finally decided, in a divorce action between the plaintiff and defendant in which decree was entered by the Polk District Court on May 3, 1960. Prior to the granting of the divorce the parties entered into a stipulation in

regard to custody of the children and visitation rights, which agreement also provided that after September 1, 1960, if the parties were unable to agree on the question of support the matter should be submitted to the Polk District Court for decision.

The parties having failed to agree on support, the plaintiff filed her application for an order setting the question for hearing. The defendant filed his resistance and also his application for custody of the minor children. Trial resulted in the court fixing an amount of support to be paid by the defendant which he considers excessive, and denying his application for change of custody. The court also permitted the plaintiff at the close of the evidence to amend to conform to proof so as to ask that the defendant be ordered to repay to trust funds belonging to the minor certain sums he had withdrawn therefrom; and the court entered its judgment on this amendment as prayed. From all these orders and judgments the defendant appeals; except that he concedes that by stipulation the custody of the minor David Chase is not involved in the case.

The minors involved are David, now age 17, and Givin, age 12. David is the natural child of plaintiff by a former marriage, but was adopted by the defendant during the married life of these parties. Givin is the natural child of both parties. A few months after her divorce from the defendant the plaintiff remarried with one Neal, and is presently living with him in West Des Moines, in a home built by them there. Both plaintiff and defendant are scions of wealthy families and have very substantial incomes. The plaintiff as a witness stated her income as about $19,000 per year. Apparently this comes from trusts established for her by her father and mother. The defendant is also the beneficiary of certain trust funds, and is employed by the Chase Investment Company of Des Moines. He gave his income, before taxes, as something over $29,000 for the year before the hearing. He has a considerable amount of indebtedness; much less, however, than his net worth.

I. The trial court ordered the defendant to pay $200 per month support for each of the minors. The plaintiff testified that a reasonable amount required to support the two boys is $872 per month, and she thought the defendant should pay one

half. The trial court seems to have adopted her theory, at least to the extent that its order approximates the one half which the plaintiff asked. These amounts do not include board and housing for the boys, since the plaintiff said that her present husband, Neal, has agreed to furnish those items.

The defendant thinks the amounts allowed are excessive, and introduced considerable testimony from other parents, claimed to be in substantially the same income and social brackets as the parties here, to the effect that they are able to support their children on much lesser amounts. The trial court was impressed by the thought that the minors should be supported in accordance with their station in life, which seems to mean, in this case, that they should have all possible luxuries. The thought of expending $872 per month on two boys, not including their food and lodging, will give the average parent pause. The details of what the plaintiff thinks necessary include trips to Florida, large allowances per month for gas and oil for trips to the Wakonda Club and to visit friends, $100 per month for clothing, $50 per month for athletic equipment, including snorkels, $75 per month for trips and vacations, $1200 each year for summer camps, and a variety of other items deemed indispensable, by their mother at least, for the welfare of these lads.

Summers spent at the lakes or in boys' camps; winter vacations in Florida; automobiles; private preparatory schools, and colleges; lavish sums for spending money and clothing; large amounts for athletic equipment of all kinds—these things do not impress us as necessary to the welfare of these boys to the extent urged by their mother or allowed by the trial court.

The court was of the opinion that it is to the best interest of the minors that they should know their father is meeting his parental duty by furnishing at least a substantial part of their support. It is certainly arguable they will have more respect for their father if he does this; but it is not necessary to go to extremes. We doubt that any benefit will result to the moral fibre of children of the wealthy by lavishing upon them endless luxuries. In fact, we think it the poorest sort of preparation for the battle with the world which all must eventually face in one way or another. It is possible to "kill with kindness"; and this

applies to character as well as to the body. It is not an approved method of character building.

There are no decided cases which aid in the determination of the question involved here. Factually, each case stands much alone. These boys should have such support from their father as their needs, rather than their wants, require. An allowance of $100 per month per child should be ample under the existing circumstances, and such will be the order.

The trial court properly ruled that the sums to be paid by the defendant for support shall be due only when the boys are not with him, and when they are not in private preparatory school or college. The reason for the latter provision is that their paternal grandmother has established trusts under which each will be entitled to receive $2500 per year while in preparatory school or college, and so no support from the parents will presumably be needed. David is already of college age, and Givin will shortly be old enough to attend preparatory school. We agree with the findings and order of the trial court at this point, except for the reduction in the amounts allowed indicated above.

II. The original decree provided that defendant should have the right to have Givin, the only minor whose custody and visitation rights are involved here, with him during the school vacation periods in June, July and August. The trial court modified this by giving the defendant custody only during the period from the end of the school year in June to the end of that month. The reason for this is that the boy will presumably be in a summer camp during July, and after he reaches the age of fourteen will be away from home at a preparatory school. So the plaintiff would have him with her almost no time, as the court viewed it.

However, we note from the record that the plaintiff testified that the boys needed $30 per month each for school lunches, and this follows: "Q. The boys going to West Des Moines to school? A. Yes, I prefer public school; they will go into school there." This somewhat destroys the thought that Givin will not spend much time with his mother unless the stipulation and decree in the divorce case are changed. In any event, since she has custody during the nine months of the ordinary school year, the

decision whether he will remain with her and attend the public schools or whether he will be sent to a preparatory school is hers to make. We think the original stipulation and decree should remain unchanged at this point.

The defendant contends there has been no sufficient change in circumstances shown to warrant any change in custodial or visitation rights. We find that both parties alleged various changed circumstances; but in view of our determination that there should be no change in the decree the point is not material.

III. The defendant assigns error because the trial court ordered that the allowance for child support should begin on November 1, 1960. Again he asserts that no sufficient change in circumstances had been shown since the date of the original decree or any intervening proceeding. He cites Shepard v. Gerholdt, 244 Iowa 1343, 60 N.W.2d 547. On May 16, 1961, the court had made an allowance for temporary support pending the final decision on plaintiff's application to fix permanent support allowances. The stipulation in the original case provided that if the parties were unable to agree on child support thereafter, the matter should be submitted to the Polk District Court for determination. That is what the plaintiff did. Under this agreement, no change in circumstances would be necessary; and we have further pointed out that both parties had pleaded such changes.

We find nothing unjust in the allowance referred to above in this division except that the amount will be reduced from $200 per month for each minor to $100 per month, as indicated in Division I above.

IV. The final error assigned concerns the ruling of the trial court which permitted the plaintiff to amend her application to conform to proof so as to pray that the defendant be ordered to repay certain sums taken by him from the trust funds of the two minors; and that part of the court's decree which then directed the repayment of these sums. It appears that during the course of the trial plaintiff's counsel offered Exhibit "N", which purported to show the amounts withdrawn by the defendant from the trust funds; and also orally stated: "it is stipulated by counsel that the amounts shown on this exhibit are

the amounts to be restored to the savings accounts of John Givin Chase and David Chase, * * *, are substantially correct and that these figures, which without complete verification, were given by counsel for defendant to counsel for plaintiff in the course of a telephone conversation some months previous and that said Exhibit N also shows the information given during the same telephone conversation with respect to the stockholdings of the two minors referred to."

To this defendant's counsel said: "To which I would add only that the information was based upon the best information which I had available at the time. It may not be absolutely accurate." Plaintiff's counsel then said: "It may be so stipulated."

When the amendment to conform to proof at the close of the evidence was offered, defendant's counsel objected. After saying the amendment was untimely, he continued: "The allegations are based upon what may well be an inaccurate accounting, they being figures which have not been checked by either the defendant or his counsel. Obviously, the defendant has had no opportunity to present evidence in this regard which may well lead to an accounting suit. In addition, the defendant contends and should be accorded the opportunity to offer proof that the plaintiff should contribute at least one half of the repayment of the funds, it being his contention that the plaintiff had full knowledge thereof." Additionally counsel stated: "* * * in general, the amendment presents entirely new matters, does not, in fact, conform to the proof, and certainly presents matters for adjudication which the defendant has had no opportunity to present evidence in resistance."

The trial court proceeded to permit the filing of the amendment and to enter its decree that the defendant restore the moneys to the trust funds. It is obvious that no such issue was presented by the application of the plaintiff, which dealt entirely with child support, or that of the defendant, which concerned custody; or the counterclaim of the plaintiff for modification of visitation privileges. Rule of Civil Procedure 88 provides, so far as material here: "* * * The court, in furtherance of justice, may

allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense."

The trial court has a broad discretion in permitting amendments to conform to proof. The point is discussed, with citation of several authorities, in Ver Steegh v. Flaugh, 251 Iowa 1011, 1021, 1022, 103 N.W.2d 718, 724, 725. We have also said, in connection with this rule, that in equity cases our concern is not whether there was error in permitting the amendment, but whether the final decree was right. Rasmussen v. Rasmussen, 252 Iowa 414, 422, 107 N.W.2d 114, 119. In so deciding, however, we must give attention to the wording of rule 88, supra, which says amendments may be permitted which do not change the claim or defense. The amendment here made a material change in the plaintiff's claim. It permitted her to add to a simple application to the court to fix child support and visitation rights a contention that the defendant should return several thousand dollars to certain trust funds belonging to the minors. Evidence of the withdrawal had been introduced, with a stipulation as to the amounts, which, however, contained the reservation that they might not be accurate. We think the true rule is that amendments to conform to proof, granted there is such proof, may be allowed if they tend to support plaintiff's original claim, even on a different theory; but amendments which introduce an altogether different claim are improper, at least if this comes as a surprise to the opposing party and he has had no fair opportunity to respond to it.

In Ver Steegh v. Flaugh, supra, we pointed out that the defendant had not requested an opportunity to offer further evidence after the amendment was allowed. Loc. cit. 251 Iowa 1022, 103 N.W.2d 725. See also Kaltenheuser v. Sesker, 255 Iowa 110, 114, 121 N.W.2d 672, 675. In the instant case, the defendant urged that he should be accorded the opportunity to offer proof that the plaintiff should be held to repay one half of the moneys. He does not question the jurisdiction of the court, but says it is a matter of justice. We conclude that the defendant should be allowed to plead to the amendment, and to ask for relief against the plaintiff requiring her to pay one half of the sums in question if he is so advised; and the court should then

make an accounting of the exact sum to be replaced and the liability of the plaintiff to contribute. The court's judgment against the defendant at this point is reversed and the matter remanded for further proceedings in accordance with this division of our opinion.

V. Some complaint is made by the defendant of the appointment of a guardian for the property of the minors, upon the application of the plaintiff. No proposition raising the point is assigned as error, however; and in any event we find nothing improper. It is not claimed that there should not be a guardian for the property, or that the guardian, a Des Moines bank, is not qualified.—Affirmed as to the custody of Givin Chase; modified and affirmed as to the allowances of support money; reversed on the question of visitation rights; and reversed and remanded on the judgment requiring the defendant to repay the sums withdrawn from the trust funds of the minors. Costs will be taxed three fourths against the plaintiff and one fourth against the defendant.

All JUSTICES concur.