In re The MARRIAGE OF DeWayne A. TEEPE and Debra Jean Teepe.

Upon the Petition of DeWayne A. TEEPE, Appellant,

and Concerning

Debra Jean TEEPE, Appellee.

No. 3–61608.

Supreme Court of Iowa.

Nov. 22, 1978.

Robert C. Oberbillig, Des Moines, for appellant.

Naomi S. Mercer, Des Moines, for appellee.

Considered by UHLENHOPP, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

ALLBEE, Justice.

This appeal involves a dispute between parents over custody of a child conceived during wedlock but born after the dissolution of their marriage. Trial court awarded custody to the mother, Debra Jean Teepe, prompting this appeal by the father and petitioner, DeWayne A. Teepe.

Three issues are presented for review: (1) whether the custody question was properly treated as incident to the original dissolution proceedings, rather than as a modification of a custody agreement between the parties requiring a change in circumstances; (2) whether trial court, in making the custody award, placed undue emphasis on DeWayne's homosexual conduct; (3) whether trial court abused its discretion in refusing to grant petitioner's application for the interview of Tom Treece by the Florida Department of Health and Rehabilitative Services. An understanding of these issues requires a recitation of some factual background.

Both parties are deaf; Debra is also diabetic. She can communicate only by sign language. DeWayne's hearing impairment is partially corrected by a hearing aid, he can speak to some extent and he also uses sign language. Their child is able to hear and speak.

The parties met when both were students at the school for the deaf in Council Bluffs and were married on October 14, 1972. No children were born during the marriage, which was dissolved by decree of May 20, 1975. The child whose custody is disputed, Loretta Lynn Teepe, was born December 24, 1975, seven months after the dissolution. Neither party was aware that Debra was pregnant before the decree was entered.

Following the divorce and the realization that she was pregnant, Debra was taken into the home of DeWayne's parents in Oelwein, where DeWayne was also residing. While living in Oelwein they became recipients of services from the Department of Social Services. As part of those services, a public health nurse instructed Debra in food preparation, child care and the handling of her own diabetic control. Debra was unhappy in Oelwein and had difficulties with DeWayne's mother. In early March of 1976, she left Oelwein to live in Des Moines. She returned to Oelwein on April 20 for a meeting with DeWayne to discuss custody. Also present at that meeting were two social workers and the public health nurse. By concensus it was there agreed that Loretta would remain with DeWayne. Debra then returned to Des Moines.

After a two month interval, during which Debra had contacted an attorney to obtain custody of the child, DeWayne brought the baby to Des Moines and moved in with Debra. They encountered many problems, just as when they were married. Because of his hearing and speaking impairments, DeWayne was unable to obtain desirable work. He changed jobs often and was frequently unemployed. He lacked the ability to manage money. Debra had difficulty stabilizing her diabetic condition. From Des Moines, they moved to Dallas, Texas. During their sojourn in Dallas, she was ill much of the time.

Their problems were exacerbated by DeWayne's homosexual conduct. He admitted to one occasion of receiving pay for sexual relations with a man. The frequency and extent of his homosexual relations is disputed. The record does, however, support the conclusion that he was involved in other such activity.

Debra went to Florida from Dallas in late 1976 to live with her mother and stepfather, where she remained except for the occasions on which she returned to Des Moines for proceedings connected with this controversy. Debra's mother is a person of substantial financial means, the proprietor of a women's clothing store in Homosassa Springs, Florida.

During mid-1976 both parties commenced actions seeking custody of Loretta. Debra filed for another dissolution based on the claim of a common law marriage. DeWayne filed a petition in the original proceedings asking that Loretta be declared the legitimate child of the parties and that he be given her custody. By agreement, only the custody issue went to trial, and Debra's dissolution action was dismissed. With this background of events and circumstances we turn to the issues presented for review.

I. *Custody: incident to the original dissolution proceedings or modification due to change in circumstances?*

■ Trial court determined that the question of custody was incident to the dissolution although arising a considerable time after the original decree. Petitioner contends it should have been considered as a modification, with the burden of proof on Debra to show material and substantial change in circumstances. He would give the parties' purported custody agreement, reached on April 20, 1976 with the aid of social workers and the public health nurse, the same effect as a court order fixing custody.

The original dissolution decree contained no provision for custody as there was no known reason to do so. DeWayne's 1976 petition for custody asks for an adjunct to that decree. That is, he requests an additional determination, not a modification of, or change in, the decree's original terms. Under these circumstances, trial court properly considered this dispute as within the original dissolution proceedings. See *In re Marriage of Smith*, 269 N.W.2d 406, 408 (Iowa 1978).

■ Neither is it necessary that this dispute be treated as an attempt to modify the custody arrangements arrived at by agreement. Private custody agreements which have not been court approved are without binding force on the court. See *Brin v. Brin*, 240 Iowa 659, 664, 37 N.W.2d 261, 264 (1949) (dicta); cf. *In re Marriage of Habben*, 260 N.W.2d 401, 403 (Iowa 1977). See generally 67 C.J.S. Parent & Child § 11(d)(3) at 645–6 (1950).

II. *Propriety of trial court's award of custody.*

Our first and governing consideration in this dispute must be Loretta's best interests. Rule of Appellate Procedure 14(f)(15). In our de novo review we are guided by several principles, summarized in *In re Marriage of Bowen*, 219 N.W.2d 683, 687–8 (Iowa 1974):

> The status of children should be quickly fixed and, thereafter, little disturbed. . . . No hard and fast rule governs which parent should have custody. It is not a matter of reward or punishment. The issue is ultimately decided by determining under the whole record which parent can minister more effectively to the long-range best interests of the children.

We apply these principles in light of the factors set forth in *In re Marriage of Winter*, 223 N.W.2d 165, 166–7 (Iowa 1974).

■ Upon examination of the entire record we conclude that trial court was justified in awarding custody of Loretta to Debra. Trial court found, and we agree, that both parents love the child; both have demonstrated the ability to care for her physical needs. But we are convinced Loretta's long-range best interests will be better served by the award of her custody to Debra rather than DeWayne.

Several witnesses testified they had observed that Debra was quite capable of caring for Loretta and attending to her needs. They also related that she was attentive and loving towards her child and that she responded to her needs, played with her and disciplined her when necessary. These witnesses included Luann Wenthold, the public health nurse, Eloise Lietzow, Director of Deaf Services of Iowa for the State Department of Health, and three family friends. Debra's mother gave similar supporting testimony and declared her desire to assist Debra and Loretta in establishing a permanent home in the community where Debra's mother lives. She expressed an intent to be supportive of them. In response to trial court inquiry, she promised to give Debra financial assistance as needed.

DeWayne forcefully argues that his claim to custody is enhanced because he has cared for the child and provided for her needs over the greater period of time; he reminds us that the custody of children should be quickly fixed and not disturbed. He claims custodial rights founded upon both the April 20 agreement and his past care and insists that Loretta's custody can be shifted for only the most cogent reasons. He cites, among other cases dealing with similar problems, *In re Marriage of Woodward*, 228 N.W.2d 74, 76 (Iowa 1975), *Schoonover v. Schoonover*, 228 N.W.2d 31, 34 (Iowa 1975), *In re Marriage of Bowen*, 219 N.W.2d 683, 687–8 (Iowa 1974), and *Jensen v. Sorenson*, 211 Iowa 354, 364, 233 N.W. 717, 722 (1930).

Petitioner's claims of ability to care and provide for his child, and that she was well-cared for, were confirmed by witnesses including his mother and Gene Lynch, a social worker employed by the Fayette County Department of Social Services. Mr. Lynch also made reports to trial court of home investigations he conducted. In concluding one report he stated that DeWayne could provide "an adequate home" for his daughter. He also reported that DeWayne "has a great deal of love and concern for Loretta," and that they "had a very good relationship." Nothing in the record indicates DeWayne ever neglected or mistreated Loretta.

Nonetheless, on the basis of the facts presented by the record in this case, we do not believe the evidence establishes that DeWayne can more effectively minister to Loretta's long-range needs. It is true that prior to trial Loretta lived with DeWayne for the greater period of time. However, when Debra was not living with him, DeWayne was seldom without the aid of his mother. There was also a period of time when DeWayne and Loretta lived in Florida with his friend, Tom Treece. During this time Loretta was taken to a day care center or cared for by Treece's mother. Trial court's findings place emphasis on DeWayne's employment difficulties and questionable ability to manage money and noted that neither party has independent financial means. Consequently, it is probable that either parent, if given custody, will have need of public assistance or financial aid from his or her family.

Petitioner claims the only evidence adverse to him was that, in his words, "he may be bisexual." He insists that this does not justify denying him custody. In addition to the previously noted admitted instance of homosexual prostitution, which occurred during a period when the parties and their child were living together in Des Moines, one other incident requires recounting. On December 23, 1977, about three weeks prior to the trial of this case, DeWayne was arrested in Oelwein for exposing himself while standing before a window of his apartment. At the time he was wearing a wig and women's clothing. Charges were later dismissed on the condition that he seek psychiatric treatment.

■ These incidents collectively were considered by trial court as one of several factors that influenced the result it decreed. The two specific incidents can be classified as sexual misconduct. Such misconduct which affects the child may be given consideration in determining child custody, *Hagen v. Hagen*, 226 N.W.2d 13, 16 (Iowa 1975), *In re Marriage of Dawson*, 214 N.W.2d 131, 132 (Iowa 1974), although immoral acts

744

alone do not necessarily make a person unfit for custody of his or her children. *McNamara v. McNamara*, 181 N.W.2d 206, 210 (Iowa 1970).

 Contrary to his claim, trial court did not decide this case solely on the issue of DeWayne's homosexuality. Trial court properly gave consideration to evidence of proven immoral acts as one of several factors that weighed in its decision.

We perceive greater risks to Loretta's future if she were placed with DeWayne. His lack of vocational training and constant changes in jobs, his problem with managing money, his frequent changes in residence and his sexual proclivities cast doubt on the wisdom of preferring him as the custodial parent; these factors, in fact, suggest his influence could be detrimental to the child's welfare.

III. *Trial court's refusal to order an interview of Tom Treece.*

On the day trial commenced, January 13, 1978, petitioner applied to trial court for a request that the Florida Department of Health and Rehabilitation Services interview Tom Treece. The stated purpose was to obtain information from Treece concerning Debra's purported refusal to take medication required for her diabetes when living in Dallas and of the reluctance of Debra's mother to assist her. He cited § 598.12, The Code, which permits the court to appoint an attorney to represent the interests of minor children, as authority for trial court's power to make such an order. This section is not applicable, as no attorney for the child had been appointed. In any event, whether to act under that statute is within the court's discretion. *Boyes v. Boyes*, 247 N.W.2d 265, 268 (Iowa 1976).

Trial court's denial of the application was apparently based on the fact that the report would be hearsay. The court also expressed some doubt about its relevancy. *But see In re Yardley*, 260 Iowa 259, 266, 149 N.W.2d 162, 167 (1967) (limiting such reports to their probative value); *Shepard v. Gerholdt*, 244 Iowa 1343, 1349–

50, 60 N.W.2d 547, 551 (1953) (to the same effect, but adding that such value is very slight).

If any evidence Treece would have to offer was thought to be of critical importance to petitioner, the application should have been made in a more timely manner. Trial court acted within its discretion in denying the application.

Our review of the entire record has revealed that trial court's resolution of this cause was correct.

AFFIRMED.