**IN THE COURT OF APPEALS OF IOWA**

No. 3-1168 / 13-0639
Filed March 12, 2014

IN RE THE MARRIAGE OF
KELLI DAWN HILL HUNT
AND TONY ROBERT HUNT

Upon the Petition of
KELLI DAWN HILL HUNT, n/k/a KELLI DAWN HILL,
        Petitioner-Appellant,

And Concerning
TONY ROBERT HUNT,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Richard B. Clogg,

Judge.


        Kelli Hill Hunt appeals the physical care and property distribution

provisions of the decree dissolving her marriage to Tony Hunt.  **AFFIRMED.**


        Diane L. Dornburg, Des Moines, for appellant.

        Kodi A. Brotherson and Stacey N. Warren of Babich Goldman, P.C., Des

Moines, for appellee.


        Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**POTTERFIELD, P.J.**

Kelli Hill Hunt (n/k/a Kelli Hill) appeals the physical care and property distribution provisions of the decree dissolving her marriage to Tony Hunt. She argues the district court erred in denying her request for a custody investigation, awarding joint physical care, and in the division of the parties' assets.[1] Tony requests appellate attorney fees. We affirm finding the court properly appointed a guardian ad litem for the children, properly awarded the parties joint physical care, and equitably divided the parties' assets. We grant Tony's request for appellate attorney fees.

## I. Facts and proceedings.

Kelli and Tony knew each other during childhood and began their romantic relationship while in high school. The two married in 1996, and separated in 2012. They have three children ranging in age from eight to thirteen years old. Kelli has a Ph.D. in psychology and works as a child psychologist. Tony is employed as a quality analyst.

Kelli filed a petition for separate maintenance in April 2012. Both parties participated in mediation on May 31, 2012. The parties signed a mediation agreement, which included a joint physical care arrangement where both parents would rotate in and out of the children's home. Several months later, Kelli requested a hearing on temporary matters, which was held on October 16, 2012. The court order continued the joint physical care arrangement with the two

---

[1] Kelli also argues the court erred in its award of temporary joint physical care after the pretrial hearing on temporary matters. This issue is moot. *See In re Marriage of Denly*, 590 N.W.2d 48, 50 (Iowa 1999) ("Temporary custody orders . . . are subsumed in the final custody determination and are not judgments that can be separately enforced.").

parents rotating time in the children's home. On November 21, Kelli filed an application for a custody evaluation, alleging a clinical psychologist was necessary to assess the children's needs in light of her perception Tony was abusing alcohol. She proposed a doctor in Fort Dodge conduct the evaluation to ensure no conflict with her own practice. Tony resisted the motion, arguing the evaluation would only prolong the already protracted dissolution proceedings. The court denied the request to appoint the custody evaluator and instead appointed a guardian ad litem (GAL) to represent the children's interests in the proceedings. The GAL conducted a series of interviews with the family members, teachers, and counselors and provided a report to the court. Trial on the petition for dissolution was held February 6 and 7, 2013. The GAL, Tony, Kelli, a family services worker, family friends, and siblings of the parties testified. On February 21, 2013, the court entered its decree dissolving the marriage. Among other things, the decree provided that the parties would continue joint physical care of the children and adopted Tony's proposed division of assets. Kelli appeals.

## II. Analysis.

Our review of dissolution of marriage proceedings is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *Id.* We review the decision to appoint a guardian ad litem or custody evaluator under Iowa Code section 598.12 (2011) for an abuse of discretion. *In re Marriage of Teepe*, 271 N.W.2d 740, 744 (Iowa 1978).

A. *Denial of request for custody evaluator.*

Kelli first argues the district court erred in appointing a GAL to represent the children's interests instead of a custody evaluator. Specifically, she argues the court should have appointed her proposed investigator from Fort Dodge. In her application for a custody evaluation, Kelli stated, "It is in the children's best interest that they be evaluated by a neutral third-party professional to assess their development, adjustment, preferences and other matters related to their long-term best interests." While Kelli argues the custody evaluator might have been more thorough, appointing her proposed investigator would have cost the parties more time, money, and problems involving transportation to another city. The trial court did not abuse its discretion. *See id.*

B. *Joint physical care.*

Next, Kelli argues the district court erred in its award of joint physical care of the children. When determining whether joint physical care is appropriate, our concern is for the best interests of the children; to evaluate this we look to the factors delineated by the court in *Hansen*. These factors are: stability and continuity of the parenting relationship, the ability of the parties to communicate and show respect, the degree of conflict between the parties, and the degree of agreement as to general daily matters. *Hansen*, 733 N.W.2d at 679-99. Upon our de novo review of the record, giving deference to the trial court's credibility determination, we agree with the court that the factors show joint physical care is appropriate here. The children are thriving in the shared-care arrangement that has been in place since the mediation agreement. The parties communicate effectively by e-mail and text message; both reported to the GAL that

communication would be easier after the divorce proceedings were finalized. Kelli points to the parties' participation in marriage counseling as evidence of their degree of conflict; however, this shows the parties' willingness to work together through conflict.

Kelli argues that "it may superficially appear that the family might meet the minimum standards for joint physical care under the *Hansen* criteria, a deeper and more realistic analysis of the facts . . . dictates that joint physical care is not appropriate." She draws our attention to the longer list of considerations detailed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). She argues that when we look to these factors—specifically those relating to the characteristics and parenting abilities of the parents—we cannot find joint care is in the children's best interests. She argues the GAL report supports the proposition that the children are closer to their mother than father. However, when asked about the differences between her observation of the children in the home first with Kelli then with Tony, the GAL replied "I didn't really feel there was a whole lot of difference when I was there either time." Kelli points to her perception of Tony's drinking, however, the GAL did not find independent evidence to support the claim, and the court ordered both parents not to drink while the children are in their custody. Looking to the *Winter* factors as well, then, we find the joint physical care arrangement is in the best interests of the children. *See Winter*, 223 N.W.2d at 166-67.

C. *Property distribution.*

Kelli appeals the equalization payment provision of the property distribution provision of the decree. Tony argues her appeal is not preserved, as

she has already paid the equalization payment in full. We find this argument is contrary to the policy of our courts. *See Peoples Trust & Sav. Bank v. Sec. Sav. Bank*, 815 N.W.2d 744, 754 (Iowa 2012) ("We think that in the modern economic and business environment, a party ought to be able to avoid unnecessary costs and expenses by simply paying a judgment without losing a right to appeal."). We therefore continue to the merits of Kelli's claim.

Kelli specifically takes issue with the court's order for her to make an equalization payment of $33,535.95 to Tony, because she argues she could not make the payment without selling the marital home. Kelli was awarded the marital home, $50,217.45 of Tony's retirement account, and 82.46% of consolidated student loans with a balance of $3385. She argues this division was inequitable for several reasons: the court used an excessive market valuation of the parties' marital home, the division of the 401(k) could result in a tax burden if Kelli took a distribution from the account, and the division of the student loans should have been half to each. Kelli argues, "[I]n order to achieve an equitable distribution of property and debts, [Tony] should be awarded the entire $150,000 balance of his 401(k) and pay [her] an equalizing cash payment of $29,000." However, at trial she testified that her idea of an equitable distribution would be "adding up all the assets and splitting that in half which would make my having the equity in the house, keeping my 403(b) and him owing me some money from his 401(k)." When asked whether she could reimburse Tony for his share of the home by refinancing the home, she replied that she thought she could. She also testified she had a line of credit available for that purpose.

Kelli argues on appeal the district court relied on an inaccurate market valuation of the home of $218,000—a number proposed by Tony based on a listing of a similar home in the area. A fairer number, she argues, would be $197,470—the home's assessed value for tax purposes. In her affidavit of financial status, she listed the market value of the home as $220,000. The property division ordered by the court resulted in Kelli receiving $132,253.59 and Tony receiving $133,671.21.

A trial court's division of assets must be equitable—this does not necessarily mean the division must be equal. *Hansen*, 733 N.W.2d at 702. In that case, our supreme court declined to disturb the district court's valuation of a marital home, noting: "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence. . . . Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.* at 703 (internal citations omitted). We do not disturb the trial court's decision to rely on Tony's valuation. *See id.* Further, the court in its division noted that despite Tony's income being less than Kelli's, he did not request any other support.

We conclude the property distribution was equitable.

*D. Appellate attorney fees.*

Tony requests appellate attorney fees. In deciding whether to award a party appellate attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993).  We award Tony $1000 in appellate attorney fees.

**AFFIRMED.**