KATHERINE PATZNER, appellee, v. LAVERN PATZNER, appellant.

No. 49398.

(Reported in 93 N.W.2d 55)

NOVEMBER 18, 1958.

Hunt & Degnan, of Guttenberg, for appellant.

A. H. Borman, of Guttenberg, for appellee.

THOMPSON, J.—On January 7, 1957, plaintiff filed her petition asking a divorce from defendant, and for the custody of two minor children of the parties, Steven, age five, and Marcella, age four. The defendant answered and cross-petitioned, also praying for a divorce and for the custody of the children. Trial was had, beginning on September 9, 1957. On October 14, 1957, the trial court filed its findings of fact, conclusions of law, and decree, which granted plaintiff judgment substantially as prayed, and dismissed defendant's cross-petition. Certain provisions were made for the support of the children by the defendant; but the amount of these, of an allowance for attorney fees, and the details of a property settlement included in the decree are not challenged in this appeal, and we give them no further attention.

The defendant relies upon three propositions for reversal: 1, that the court was in error in finding plaintiff had sustained the burden of proving grounds for divorce; 2, that the court was in error in dismissing defendant's cross-petition; and 3, that the court was in error in granting custody of the children to plaintiff.

Plaintiff pleaded and relied upon inhuman treatment such as to endanger her life. It is obvious that if the court was correct in its judgment awarding a divorce to her, it was also right in denying one to the defendant. We shall first consider the soundness of the decree and judgment at this point.

I. We find little difficulty in agreeing with the trial court's determination that plaintiff sufficiently carried the burden of proof required to show that she was entitled to a divorce upon the ground of inhuman treatment which endangered her life. The record is long, and several incidents are detailed by the plaintiff and her witnesses, and to some extent at least, denied by the defendant. One of these, however, is not denied, but is in fact admitted. It is in itself ample to require the grant of a divorce. The parties separated on December 8, 1956, when plaintiff left the home for reasons which will be detailed and

discussed later. The defendant had on that day taken the two children to the home of his parents on a farm in the town limits of Guttenberg, in Clayton County. Plaintiff went to the home of her uncle in the same county. On December 14, following, while she was engaged in hanging out a washing in the yard of the home, the defendant appeared with a deputy sheriff of the county, and the two men seized her at the wash line, dragged her to a waiting automobile, and took her to St. Joseph's Sanitarium for mental patients in Dubuque. She was confined here for some two weeks, when she was released. So far as the record shows no mental illness was discovered. The seizure was without authority of any warrant or other process; it amounted to a forcible kidnaping. How the services of the deputy sheriff were enlisted in this most unjustifiable abduction does not appear. The defendant justifies by saying the plaintiff needed mental treatment; but she had not been examined by a physician, nothing was found wrong at the sanitarium, and nothing has appeared since to give any fair reason for doubting her entire sanity. It requires no elaboration to demonstrate that this conduct, which included dragging plaintiff away over her protests and by overcoming her struggles, refusing even to permit her to get a coat or any change of clothing, and incarcerating her in a mental institution for some two weeks is such inhuman treatment as meets the requirement of the statute. The plaintiff believably says she was put behind locked doors and windows, that she was humiliated, could not eat or sleep and was made highly nervous. The defendant admits that he took her to the sanitarium without her consent, justifying only by the statement that he thought she was acting irrationally, with some detail as to this. No justification for the conduct of the deputy sheriff, one Milton Klink, in aiding in this outrage, appears.

As we said in Kovar v. Kovar, 237 Iowa 251, 272, 21 N.W.2d 534, 544, a quite similar case: "It is difficult to conceive of cruelty so merciless, mercenary, and unsated." It is true the confinement was for two weeks only; but it was due to no leniency of the defendant that it was not longer. The sanitarium authorities themselves released the plaintiff when they found there was no reason for holding her; that is, that she was not

in any way mentally unsound. The defendant did not come to bring her home; she was returned to Guttenberg by friends.

While this incident alone amply justifies the finding of the trial court, there are others. The plaintiff testifies, with direct corroboration, that the defendant accused her of being pregnant by another man, which was untrue. There is also another instance of a "laying on of hands" by the defendant, when he dragged the plaintiff from a car belonging to one Loren Herman on the street in Guttenberg. The plaintiff, Loren Herman and his wife all testified that they had been sitting in the car near a tavern, when Loren decided to go into the tavern. He had previously met his brother Elmer on the street, and, thinking him intoxicated, had invited Elmer to ride home with him. After Loren had been in the tavern a short time his wife, Florence, decided to go after him. While both Loren and his wife were away from the car Elmer got into the back seat of the car where the plaintiff was sitting. She remarked: "Elmer, you are pretty well looped", and was about to get out of the car when the defendant appeared and "yanked" her out, with the result of an unseemly altercation on the public street. The defendant has a somewhat different version of his reason for jerking the plaintiff from the car; but her story is corroborated by Loren Herman and his wife and is much more convincing.

Without going into the long story of other marital quarrels and mistreatments which fill the quite extensive record, we content ourselves by saying that we entirely agree with the trial court that plaintiff amply carried the necessary burden of proof, and is entitled as a matter of right to a divorce.

II. The defendant's second challenge is to that part of the decree awarding the custody of the children to the plaintiff. In support of his position at this point he urges that plaintiff insisted upon working at outside employment, which during most of the lives of the two small people required either their care by baby sitters during the day, or leaving them with his parents in Guttenberg or with other relatives; that they have spent much of their lives with the paternal grandparents, who have a good home on a farm in the edge of the town, are fond of them and are sending Steven to school; that the plaintiff is still working and, presumably, would again be required to leave

them with others during her hours of employment; and that she has shown little interest in the children since she left the home on December 8, 1956, not having seen them or made any attempt to see them since that time.

It is well settled in Iowa that the best interests of the children must govern in these cases, and all other considerations, such as parental rights, must yield readily to this determination. Herr v. Lazor, 238 Iowa 518, 526, 527, 28 N.W.2d 11, 16, and citations. Our decision must be based upon what will be most conducive to the general welfare of the children. Of course, no one can be sure on this point. A determination that appears wisest today may by the turn of events be found tomorrow to have been unfortunate. Courts are human agencies, and, as such, must admit the possibility of mistake and inability to foresee the future. Divided homes are seldom conducive to happy results for the children. We can only attempt to arrive at the best seeming solution from the facts in the record.

The plaintiff says that the reason she worked was because they were heavily in debt and the money was needed. The defendant testified that he did not want her to work, but she insisted. It is evident that he was not averse to the use of her money so earned in paying living expenses; it was all so consumed or in paying debts. In addition, the plaintiff is corroborated by her mother, Verna Tomkins, who said that when she begged her daughter not to work the defendant said " 'We have got debts to pay'. " We think it does not lie in the mouth of the defendant to reproach the plaintiff with neglect of or insufficient interest in her children because she was employed. Nor is her present situation different from that of many working mothers who must do the best they can to support themselves and their children.

It is true that Steven and Marcella have spent much time in the home of their paternal grandparents, where their father, the defendant, is also living; and that the home is suitable and the grandparents are fond of the little folks. There is also testimony that they were very fond of their mother, and that she cared well for them when she was with them in the home. The defendant strenuously urges that the plaintiff has shown so little interest in the children since December 8, 1956, when she left the

home, that it must be taken she is not as fond of them as she should be. Some facts appear in regard to this matter.

The plaintiff says that on December 8 her husband took the children away. There had been a long history of quarreling and of abuse, charges of infidelity and threats, with one rather severe blow struck by the defendant. On the evening in question, according to the testimony of Lydia Tomkins, an aunt of plaintiff, who had been in the home to help in caring for the children for some weeks, the defendant returned without the children. When the plaintiff asked where they were, he did not answer. He went to the telephone and jerked it off the wall. When the defendant went out to do the chores she and the plaintiff left. The incident seems to have been the culmination of a long series of marital bickerings and accusations.

The children were apparently, at the time, at the home of the paternal grandparents. The plaintiff went to the home of an uncle, whence she was presently forcibly abducted for the trip to the sanitarium. She spent Christmas there, with no chance to communicate with the children. She was released on December 27, and this action, in which she asked for the custody of the children, was commenced on January 7 next. At this time the children were in the custody of the defendant, living at the home of his parents. He said that he took them there on December 8 with the plaintiff's knowledge. The parents testified that the plaintiff was at all times welcome to come there and visit the children; she says that she was afraid to go, and that she asked one Clarence Kann, a deputy sheriff, to go with her, but he said it would be best for her to stay away, because it would be hard on the children when they found they could not leave with her. Perhaps it is not strange that she was somewhat fearful of going to the home where the defendant was staying, in view of his conduct in kidnaping her and shutting her up in a mental institution. Such treatment might well incline one to keep as far away as possible from the author of it.

It is possible the plaintiff might have attempted to take the children from the custody of the defendant, or from his parents. Our statute, section 598.14, Code of 1958, says that "When a divorce is decreed, the court may make such order in relation to the children * * * as shall be right." No provision

is made for custodial order pendente lite. Whether it would be within the broad general power of the court to award custody prior to final decree we do not determine. We seem to have tacitly approved the bringing of an action of habeas corpus to determine custodial rights between the father and mother, when no divorce action is pending. Stillmunkes v. Stillmunkes, 245 Iowa 1082, 65 N.W.2d 366. But in any event such an attempt on the part of the plaintiff would almost certainly have provoked further litigation; and, in view of the fact that the matter was already before the court in the divorce matter, we cannot criticize the plaintiff because she left the question to be decided in that proceeding. Perhaps she might have made a greater effort to visit her children; but the matter is debatable, in view of what we have said. She did on occasions go to a hill from which she could watch them at play; her fear of consequences which might result and the advice of the officer whom she consulted seem in a large measure at least to justify her failure to be more assertive. The trial court so decided, and we think there was ample basis for its determination.

But it is urged that the children have now been in the home of the paternal grandparents for a considerable time—almost two years—they are adjusted there, the home is suitable, and it is not for their best interest that they be moved. It is without doubt true that they should have a settled place to live; that they should not be subjected to the uncertainties of change. But we must examine the circumstances under which they have been living in their present home. The defendant took them from their family home on December 8 and did not return them in the evening. At this time he tore the telephone from the wall and because of his threatening manner, the culmination of a considerable period of disagreement and dissension, plaintiff concluded she could no longer live with him. She is corroborated on the events of this occasion by her aunt, who was present. Shortly thereafter occurred the felonious abduction and incarceration in the mental institution. After her release from this place she brought her divorce action, asking for custody of the children.

The case was reached for trial with reasonable expedition, and the court awarded her custody. Thereupon the defendant

made an application for a stay order, first to the trial court. That court granted a ten-day extension to enable him to bring the matter before this tribunal. This was done, and, after a hearing and on November 4, 1957, an order was entered by Judge W. A. Smith of this court staying the effect of the custodial provisions of the decree until determination of the appeal. The order specifically provided, however: "This stay to be without prejudice to the final determination of the case."

It is evident that Judge Smith was cognizant of the injustice of the very argument which the defendant is now urging here. Having obtained a stay which kept the children in the home of his parents for something more than an additional year, he now says that the length of time they have been there should be an important factor in our decision as to custody. We may admit that the need for permanence and a settled home is an argument of much force in these cases; yet we cannot in justice to the plaintiff give it its full effect here. We have ourselves, in granting the stay order, said that it would be without prejudice to our final decision. We are now asked in effect to disregard this part of the order.

■ There are other considerations which bear upon the general welfare of the children. There is a presumption that a young child will be best advantaged generally by being placed in the custody of its mother. This presumption is not strong; it is readily overcome by other evidence. Stillmunkes v. Stillmunkes, supra, at page 1086 of 245 Iowa, page 369 of 65 N.W.2d; Maron v. Maron, 238 Iowa 587, 592, 28 N.W.2d 17, 19, 20; Voy v. Voy, 241 Iowa 673, 676, 41 N.W.2d 869, 870. But it has some bearing on the question.

■ There is, also, another rule which we have often announced, and which has much force in the instant case. This is, that in cases such as this, where much depends upon the credibility of the witnesses and the appearance and demeanor of the litigants, we give weight to the findings of the trial court. It has some discretion in matters of child custody and we reverse only when it appears this discretion has been abused. Rahn v. Cramer, 249 Iowa 116, 120, 85 N.W.2d 924, 926; Stillmunkes v. Stillmunkes, supra; Maron v. Maron, supra, page 591 of 238 Iowa, page 19 of 28 N.W.2d; Voy v. Voy, supra; Wood v. Wood,

220 Iowa 441, 447, 262 N.W. 773, 776. We said in Voy v. Voy, supra: "In divorce proceedings the care and custody of the children is a question addressing itself to the sound discretion of the trial court."

It is true the children have now been in the home of their grandparents for nearly two years. More than one year of this, however, was under cover of the stay order, which itself states it shall have no effect upon the final determination. Taking the case as it stood when the trial court entered its judgment, which we are asked to reverse, we find no reason for holding it abused its discretion. In fact, the attitude of the defendant toward the children during the married life of the parties leaves much to be desired. He showed little interest in them, and on many occasions left them, and sometimes in cold weather, with the plaintiff, sitting in front of a tavern in the family car while he drank and gambled within. We are inclined to think the affection and care which a mother can give these small people is of importance, and we are not disposed to reverse the decision of the able trial court.—Affirmed.

All JUSTICES concur.