JERRY L. HARWELL, appellee, v. MARILYN H. HARWELL, appellant.

No. 50481.

JANUARY 9, 1962.

Kay L. Kober and Charles F. Hinton, both of Waterloo, for appellant.

John W. Pieters, of Waterloo, for appellee.

THOMPSON, J.—Plaintiff and defendant were married on June 30, 1953, and lived together as husband and wife until August 13, 1959. At that time they separated and have not cohabited since. On March 24, 1960, the plaintiff was granted a decree of divorce. Custody of two minor daughters was given to defendant, with plaintiff required to pay $10 per week for their support. Pamela Kay, age 8, is the natural child of defendant by a previous marriage, but was adopted by the plaintiff during the married life of the parties. Debra, age 6, is the natural child of both parties.

On October 14, 1960, plaintiff filed his application for modification of the custodial provisions of the original decree, asking for permanent custody of the two minors. The defendant resisted, and on October 19 next also applied for modification, praying for an increased amount for child support. Hearing was begun on November 17, 1960, and the cause submitted. Shortly thereafter the court entered its decree and judgment modifying the original decree so as to give custody of the two small girls to the plaintiff, with certain visitation rights granted the defendant which are not in issue here. At the same time the court denied defendant's application for increased allowances for support of the children. From these judgments the defendant appeals.

I. It is elementary that in these cases the primary interest of the court is in the welfare of the children. Paintin v. Paintin, 241 Iowa 411, 415, 41 N.W.2d 27, 29, 16 A. L. R.2d 659, and citations. No one disputes this principle. This must be our major thought in determining the issues raised by the appeal.

However, there is a preliminary question which must be decided before we reach the controlling question of the welfare of the minors. We have often said that a decree of divorce may be modified only if there has been a substantial change in

circumstances since the entry of the original decree. Section 598.14, Code of 1958, is set out:

"Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

"Subsequent changes may be made by it in these respects when circumstances render them expedient."

Provisions of the original decree are final as to circumstances then existing, and the matter will not be relitigated in the absence of a showing of substantial changes affecting the parties and the welfare of the children. Paintin v. Paintin, supra, 241 Iowa 411, 415, 41 N.W.2d 27, 29, 16 A. L. R.2d 659, and citations.

We must first determine, therefore, whether the record shows a sufficient change in circumstances to support the judgment of the trial court. This requires a consideration of the evidence. Particularly, we must decide whether a circumstance in existence at the time of the entry of the decree, but which was known only to the defendant and was concealed by her, is in fact such a change in circumstances as is required. We point out that the statute says a decree may be modified "when circumstances render [it] expedient." We have apparently held this to mean a "change" in circumstances.

The particular problem in the instant case is found in the fact, admitted by the defendant as a witness on the modification hearing, that she was at the time of the entry of the decree in March 1960 pregnant by a man other than her husband. While separated from but still wedded to the plaintiff she had committed adultery with one Richard Ricks, according to her own testimony. As a result of this she became pregnant and gave birth to an illegitimate child about August 30, 1960. She also testified that she had tried to keep her pregnancy concealed from everyone, and had worn clothing designed to reduce her apparent size. The plaintiff said at the time of the divorce he had suspected her improper relations with other men, but had been unable to verify his suspicions. The court, of course, had no knowledge of her condition or of her meretricious conduct at the time of the original decree.

The defendant says that there was no pleading in plaintiff's application for modification of any improper conduct on her part. The application contains this allegation: "That certain evidence has come to the attention and knowledge of the plaintiff, which evidence was not known to the plaintiff at the time of the said Decree of Divorce and which evidence, had it been known, would have effected the custodial rights of this defendant." This was sufficient, in the absence of any motion to make more specific.

We then turn to the question whether defendant's concealed misconduct was such a "change in circumstances" as to permit modification of the decree. We hold that it was. The "circumstances" existing at the time of the original decree are those known to the court and to the opposing party, or which could have been discovered by the exercise of reasonable diligence. We think our interpretation of a change in circumstances must be held to mean a change in "known" circumstances, including those which could have been known by the use of reasonable diligence. The rule is thus stated in 27B C. J. S., Divorce, section 317(2), pages 538, 539: "The discovery of material facts existing, but unknown to the court, or the discovery of material facts existing, but unknown to a party, at the time the decree was entered, which facts could not have been then ascertained with reasonable diligence, and which, if known to the chancellor, would have impelled him to enter a different decree, may also justify a modification of the [custodial] decree."

In Crockett v. Crockett, 132 Iowa 388, 391, 106 N.W. 944, 946, we followed this rule: "And in the light of the statute, and giving construction thereto, we have held repeatedly that a decree fixing custody * * * is conclusive, unless it shall be made to appear that by reason of some change of circumstances or condition not known to or within the contemplation of the court an enforcement of its decree will be attended by positive wrong or injustice."

We also recognized the importance of adulterous conduct not known to the court at the time of the decree in Maron v. Maron, 238 Iowa 587, 592, 593, 28 N.W.2d 17, 20.

Other jurisdictions follow the same rule. Olson v. Olson, 95 Cal. App. 594, 597, 272 P. 1113, 1114; Gantner v. Gantner, 39 Cal.2d 272, 279, 246 P.2d 923, 927; Burk v. Burk, 68 Ariz. 305, 205 P.2d 583, 585; Jones v. Jones, 156 Fla. 524, 23 So.2d 623.

II. The pregnancy of the defendant at the time of the divorce, unknown to both the court and the plaintiff, in fact concealed from them, was such a change in circumstances as to warrant the court in taking jurisdiction of the application to modify. We must, however, consider whether the entire record shows it will be for the best interest of these small girls to be in the custody of their father rather than of their mother. Of course the burden is upon the applicant—the plaintiff here —to show that a change will be conducive to the welfare of the children. It is also thoroughly established that each of these cases depends on its own facts, and there is no hard-and-fast rule as to which parent should have custody. Maron v. Maron, supra, loc. cit. 238 Iowa 592, 28 N.W.2d 19, 20.

There is a presumption that small children will be best advantaged generally by the care of their mother. But this is not strong, and yields readily to other considerations. Patzner v. Patzner, 250 Iowa 155, 162, 93 N.W.2d 55, 59, and citations.

Material facts bearing on the question here, as shown in the record, are that the plaintiff had been living with his father and mother and had kept the children there for some time prior to the granting of the divorce. After the divorce decree and in accordance with its terms they lived with the defendant until the modification; that is, from March 24 to November 17, 1960.

Presumably since that time they have again been with the plaintiff. His father is a lieutenant in the Waterloo fire department; his mother is assistant credit manager of Black's department store, where she has been an employee for eight years. She is willing to devote full time to the care of the children; she has been an officer of the P.T.A. at the school the children will attend. The plaintiff is employed by the Northwestern Bell Telephone Company, earning $191 each two weeks; he was earning $22 more per month at the time of the hearing

on the application to modify than at the time of the original decree. He is a member of the Central Christian Church, located two blocks from his parents' home, and the children attend Sunday school there. He is engaged to marry a young woman, 26 years of age, who is employed as a physical therapist at Allen Memorial Hospital in Waterloo. She has met the children, likes them, and is willing to make a home for them and care for them.

The defendant has against her the admitted adultery. The illegitimate child did not live with her and the other two children after its birth; it has been placed for adoption, but no adoption has been consummated. She was for a time in a state of mental confusion, and a few months before the hearing she was making irrational decisions. She consulted a psychiatrist and thereafter became more rational. Apparently she was still taking treatment at the Mental Health Center. She has an adequate home for the children. She occasionally had part-time employment at the Hippodrome, an amusement center in Waterloo, and sometimes took the children with her at night when she worked there. They would get home around 10:30 to 11 p.m. The Saturday night before the hearing she attended a dance at a key club, leaving the children with a baby sitter and arriving home at 3:30 a.m. The children are fond of her and she keeps her home neat. She attends a Presbyterian church and took the children there except for the period between June 1 and September.

It is always true in this class of cases that any decision is most difficult. There is no real remedy for a broken home; it will almost certainly impose a heavy handicap on the children who may be affected, no matter with which parent they may reside. The sins of the father, or mother, which cause this condition are too frequently visited upon the children. The courts which must deal with problems arising from the inability or refusal of parents to live in harmony and to meet the requirements of the marriage relation can, at best, never be sure they are making the right decision, the one best calculated to do the least injury to the small and innocent people involved through no fault of their own. At best the court can make only an

educated guess. The best efforts of the courts are too often insufficient to exercise the evil arising from broken homes.

As we weigh the matters shown in the record here, it seems clear the plaintiff, his father and mother, and his fiancée are of good standing and unblemished character. No one points the finger of reproach at them, or suggests they are not proper parties to care for minor children. The defendant is no doubt fond of her daughters, and might possibly make a good home for them. But we must balance the probabilities as best we can. She has been guilty of adultery, she has an illegitimate child somewhere in the background; she has in the past needed psychiatric care. She has taken the children to a place of amusement and kept them there while she worked until late hours in the evening; not altogether a wholesome setting for small girls. We may concur in the contention that deprivation of custody of children should not be used as a means of punishment of the parent.. It is also true that a parent who has been guilty of some immorality may reform and be capable of making a proper home for children. But generally we have no way of judging the future but by the past. This is not to say that such a judgment is infallible; but certainly previous conduct must be considered. On the whole, we are compelled to agree that chances of a good life for these children with the father appear better than with the mother; and this conclusion decides the case. The defendant has quite liberal visitation rights; she will by no means be entirely deprived of contact with her daughters.

It has been noted that the older daughter is the natural child of the defendant, and an adopted child of the plaintiff. This adds a touch of difficulty to the case. However, we have concluded it will be for the best interest of these girls that they live together. Shepard v. Gerholdt, 244 Iowa 1343, 1349, 60 N.W.2d 547, 550.

III. In our decision we have of course given weight to the findings and judgment of the able trial court. The case is of that class in which the decision of the trial court is peculiarly entitled to respect. The court saw all the parties and witnesses; it was in much closer touch with the entire situation

than we can possibly be. The case is of course triable here de novo; and we have not on occasion hesitated to reverse custodial judgments when we found the evidence did not support them. But we have repeatedly said the decision of the trial court carries weight, and we think it so here. In fact, we have often said the trial court has some discretion in these matters, and we will reverse only where we find it has been abused. Patzner v. Patzner, supra, loc. cit. 250 Iowa 162, 163, 93 N.W.2d 59. We think the record supports the judgment of the trial court on the question of custody.

IV. Our holding in the previous divisions determines the defendant's appeal from her application denying her increased amounts for child support. As the children will not be with her, there is no occasion for any allowance to her for their support.

The decree of the trial court is in all respects affirmed.—Affirmed.

All JUSTICES concur except THORNTON, J., who takes no part, and BLISS, J., not sitting.