Leland P. WELLS, Plaintiff-Appellee
Cross-Appellant,

v.

Mary Anne WELLS, Defendant-Appellant
Cross-Appellee.

No. 53238.

Supreme Court of Iowa.

May 6, 1969.

**56**

Francis J. Pruss, Cedar Rapids, for defendant-appellant, cross-appellee.

Ernest F. Pence, and Fisher, Pickens & Barnes, Cedar Rapids, for plaintiff-appellee, cross-appellant.

RAWLINGS, Justice.

Trial court modified divorce decree on plaintiff's application and defendant's cross-application, at the same time adjudging defendant in contempt of court. Both parties appeal. We cannot agree in all respects with the decree from which appeal is taken.

These parties were married April 9, 1956. Defendant had a child, John Phillip, by a former marriage. He was adopted by plaintiff. Two children, Alan Lee and Gerald Scott, were born to plaintiff and defendant.

Subsequently plaintiff sought a divorce and defendant counterclaimed seeking the same relief. They then entered into a stipulation providing in part: "The matter of custody of the children herein provided for may be reviewed at the request of either party, the application therefor to be heard on or about July 15, 1966, and without the burden on either party of having to show change in circumstances."

March 31, 1965, plaintiff was granted a divorce. Trial court approved the stipulation, making it by reference a part of the decree. To the extent here relevant plaintiff-father was thereby awarded custody of all children from September 1, to June 1, of each following year, defendant-mother to have them from June 1, to September 1, except for a two week vacation purpose stay with plaintiff. As so often happens more troubles ensued.

May 25, 1966, plaintiff filed application for modification of the decree asking he be accorded total custody of the children.

June 1, 1966, defendant cross-applied seeking sole custodial rights, with attendant change in child support allowance.

On plaintiff's request an order was then issued, requiring defendant to appear and show cause why she should not be adjudged in contempt of court for willful failure to return John Phillip and Gerald Scott to plaintiff at a time specified in the decree.

Thereafter, by amendment to her cross-application, defendant alleged fraud on the part of plaintiff incident to execution of the stipulation, and requested additional alimony or an equitable property distribution be awarded her.

Hearing to the court on the aforesaid application, cross-application and show cause order resulted in a "supplemental decree" which, (1) adjudged defendant to be in contempt; (2) granted defendant sole

custody of John Phillip and Gerald Scott; (3) gave to plaintiff absolute custody of Alan Lee; and (4) entered judgment against plaintiff for $2450 attorney's fee for services rendered in connection with modification of child custody.

Plaintiff here contends trial court erred in granting custody of two boys to defendant, and by awarding an additional fee for her attorney.

Defendant asserts error in failing to accord her additional child support, alimony, property settlement, and a fee for all legal services attendant upon the modification proceedings; permitting introduction by plaintiff of alleged improper or extraneous evidence; and finding her guilty of contempt.

These propositions will not necessarily be considered in the order assigned.

■ I. Except as noted infra our review is de novo. Rule 344(f) (7), Rules of Civil Procedure; Tallarico v. Tallarico, Iowa, 164 N.W.2d 805, 807; and Fritz v. Fritz, Iowa, 148 N.W.2d 392, 395.

II. The first problem to be resolved is whether the original decree was final.

In two recent cases this court had occasion to consider that question.

The first was Betzel v. Betzel, Iowa, 163 N.W.2d 551. There the issue presented went to the matter of mental and physical condition of plaintiff mother. Trial court's decree provided, in part, the question of custody could come on for review after expiration of one year upon plaintiff's application. Citing Code section 598.14, and Harwell v. Harwell, 253 Iowa 413, 416, 112 N.W.2d 868, we held the language employed disclosed the decree was final, subject to modification only on a change of circumstance showing.

Then came Tallarico v. Tallarico, supra, Iowa, 164 N.W.2d 805. In that case a stipulation by the parties, adopted by the court in entering a decree of separate maintenance, provided, in substance, if plaintiff and defendant were not able to agree at the end of one year on support to be paid, then the matter be submitted to the court *without relation to any change of circumstances.* In holding the decree was not a finality, this court said, loc. cit., 164 N.W. 2d 807: " * * * we conclude the intent of both the litigants and the trial court was that after a one-year period the decree should be subject to revision as to support payments upon application of either party without showing any change of circumstances.

"This is clear from the language of the stipulation, particularly that part of paragraph 14 which provides an accounting and adjustment shall be made after one year *without relation to any change of circumstances* and such adjusted payments would then continue unless further changed by order of court *upon showing a change of circumstances.*

" * * * we hold the decree * * * was not a final one as to payment of support. This was clearly the intent of the trial court when the decree was entered. We so consider it on this appeal."

It is to us evident the factual situation presented in the case at bar more nearly approximates that involved in Tallarico than in Betzel, both supra.

As aforesaid, plaintiff and defendant stipulated, with court approval, the matter of custodial rights be subject to review on application of either party, to be heard on or about July 15, 1966, without any change of circumstance showing.

■ We now hold, on the issue of custody here presented the original decree was not final.

III. Trial court's allowance of attorney's fees is interrelated with the foregoing.

Unquestionably Code section 598.11 provides no authorization for allowance of such fees in an action for modification of a divorce decree. Arnold v. Arnold, 258 Iowa 850, 860, 140 N.W.2d 874.

■ This means no award for legal services performed on behalf of defendant could be allowed relative to her application for modification of alimony or property settlement.

But where as in the case at bar, the original adjudication is temporary regarding child custody and concomitant support, a reasonable fee may be allowed for legal services attendant upon an application for revision in that area. See Tallarico v. Tallarico, supra, at 164 N.W.2d 809.

■ An examination of the decree here in question discloses the allowance made was upon the basis of and specifically confined to the matter of legal services rendered relative to the child custody question. In this direction plaintiff challenges only the propriety of such an award, not the amount allowed.

We find no basis for reversal on the proposition at hand.

IV. It will be recalled trial court, by supplemental decree, granted to defendant-mother the sole custody of John Phillip and Gerald Scott, giving to plaintiff-father absolute custody of Alan Lee, with provision for interchangeable visitation rights of these children with the non-custodial parent. Each party contests that arrangement.

There are several factors involved in the issue thus presented, each of which will be considered separately.

Defendant claims presentation of testimony pertaining to her conduct prior to the original decree should not have been allowed in the supplemental proceedings.

More specifically, plaintiff offered in evidence the transcript of testimony by Eugene R. Battane, a witness in the preceding divorce action. It dealt with pre-divorce "indiscretions" by defendant.

■ Objection interposed by defendant to this transcript, reduced to bare substance, was " * * * incompetent, irrele-

vant and immaterial for any purpose * * * self-serving declaration." This, on its face, was insufficient and we find no reversible error by trial court in overruling it. See Frederick v. Shorman, 259 Iowa 1050, 1060–1061, 147 N.W.2d 478, and Floy v. Hibbard, 227 Iowa 149, 151, 287 N.W. 829.

However, a determination of the problem presented need not rest on that holding alone.

This court has held, in a hearing for modification of a decree, little if any consideration is usually given testimony at the original trial. Scheffers v. Scheffers, 242 Iowa 563, 566, 47 N.W.2d 157.

On the other hand, that does not irrevocably close the door to presentation, in a supplemental proceeding, of any prior divorce trial testimony reasonably deemed by the court to be relevant and helpful in 're-solving an always troublesome child custody problem.

■ We now hold admissibility of the controverted transcript was a matter resting in the sound discretion of trial court and, under the circumstances here involved, no abuse thereof appears. See Code section 622.97; Freese v. Freese, 237 Iowa 451, 457–458, 22 N.W.2d 242; and 27B C.J.S. Divorce § 317(8) b, p. 576, 578–579.

V. Defendant also disputes admissibility of testimony by Dr. Don C. Fitzgerald, psychologist for the Cedar Rapids Public School system, a plaintiff-called witness.

Evidence by the doctor was challenged with the objection, no proper foundation, incompetent, irrelevant, immaterial, and an invasion of the province of the court.

For reasons heretofore disclosed we confine ourselves to the latter part of this objection.

During the summer of 1966, Dr. Fitzgerald was contacted by counsel then representing both parties hereto. They request-

ed his assistance in determining the most appropriate environmental provision available for the children. The doctor then visited in the homes of both plaintiff and defendant, interviewed everyone here concerned, and conducted some tests.

When asked to express an opinion relative to custody of the children he stated, over the aforesaid objection, (1) if all three children were to be kept together, they should be placed with the father, and (2) if separated then John Phillip should be with the mother, the other two boys with the father.

■ Upon the factual situation disclosed by the record, we find no error in overruling the objection voiced by defendant regarding adequancy of foundation for an expression of an opinion by this expert witness. In fact it would appear no issue is actually raised as to his qualifications.

But even though that matter be deemed inherent in the objection made, it is still without merit. As was said in Dougherty v. Boyken, Iowa, 155 N.W.2d 488, 490: "An expert has been defined as one who is qualified by study, training, or experience in a particular subject or field of endeavor which gives him special knowledge and permits him to form a definite opinion of his own on matters persons lacking such knowledge or training cannot correctly decide. 31 Am.Jur.2d, Expert and Opinion Evidence, section 26, page 523; 32 C.J.S. Evidence § 457, page 98.

"The use of expert testimony is not new but the conditions under which it may be used are the subject of endless litigation. This whole subject is exhaustively discussed in Grismore v. Consolidated Products Company, 232 Iowa 328, 5 N.W.2d 646. As pointed out there, all expert opinion testimony is admitted as a matter of necessity; it must first appear that a jury [trier of the facts] needs assistance on issues it is unable to intelligently and correctly determine alone. Once this is

shown, expert opinions may be admitted to help the jury [trier of the facts] reach a true determination."

■ Pursuant to request made by counsel for both parties hereto, Dr. Fitzgerald had personally familiarized himself with all individuals involved and had studied the matter carefully. All procedures adopted by him were disclosed. Trial court therefore knew the basis upon which this expert's opinion was founded.

Here again the sound discretion of trial court comes into play, and we find no abuse thereof. In this regard see Dougherty v. Boyken, supra; Grings v. Great Plains Gas Co., Iowa, 152 N.W.2d 540, 544; Marean v. Petersen, 259 Iowa 557, 563–564, 144 N.W.2d 906; Lucas v. Duccini, 258 Iowa 77, 82, 137 N.W.2d 634; and Painter v. Bannister, 258 Iowa 1390, 1397, 140 N.W.2d 152.

An examination of the record discloses sufficient foundation to uphold admissibility of the psychologist's opinion testimony.

VI. However, this does not mean an opinion expressed by a qualified expert is binding on the trier of the facts. Brandt v. Richter, Iowa, 159 N.W.2d 471, 474.

■ Although the courts in this jurisdiction hold opinions of medical experts in high regard, they cannot abdicate the authority, and perforce duty, to view them in the light of recognized standards of the law, and if need be to reject them in whole or in part. Grismore v. Consolidated Products Co., 232 Iowa 328, 345–346, 5 N.W.2d 646.

VII. In their efforts to obtain exclusive custody of all three children, each party vigorously assails the moral standards of the other. But the record discloses neither occupies an enviable position in that regard. Both were guilty of "indiscretions" prior to the divorce, but subsequent thereto have apparently, in material part, mended their ways.

■ Furthermore, the "supplemental decree" entered October 13, 1966, discloses trial court then found neither party hereto "unfit to have custody of the children." There appears no compelling reason for us to disagree with that finding. See in this regard Nelson on Divorce and Annulment, Second Ed., section 15.49, page 255.

As heretofore revealed, the original decree vested custody of all children in plaintiff during each school year, in defendant for the summer months. But in Smith v. Smith, 257 Iowa 584, 588, 133 N.W.2d 677, 679, such divided custody was disapproved with this statement: "We have pointed out many times it is usually unwise and not for a child's best interests to be placed in one household part of the time and part time in another. In many instances such an arrangement proves destructive of discipline. Experience also shows the party who has the children for the shorter period sometimes sows seeds of discontent in them, inculcates in them a spirit of dissatisfaction and rebellion against authority and tries to wean the children away from the party in whose custody the decree placed them." See also McCrery v. McCrery, 258 Iowa 354, 358, 138 N.W.2d 876, and Annos. 92 A.L.R.2d 695.

This court also held in Welch v. Welch, 256 Iowa 1020, 1025, 129 N.W.2d 642, 644: " * * * brothers should not be separated and lose the benefit of constant association with each other." And in McKay v. McKay, 253 Iowa 1047, 1053, 115 N.W.2d 151, we took the position, brothers and sisters should not be separated except where circumstances so require.

VIII. Now to be determined is the matter of custodial rights as between plaintiff and defendant.

■ In that area it is axiomatic, the best interests and welfare of the children stand as the paramount and controlling factor, being superior to any claim or interest of either parent. Rule 344(f) (15), R.C.P., and Herron v. Herron, 258 Iowa 1052, 1053–1054, 141 N.W.2d 562.

■ Furthermore, custody is not to be awarded either parent as a reward or punishment. Utter v. Utter, Iowa, 155 N.W.2d 419, 422; Schildgen v. Schildgen, Iowa, 148 N.W.2d 629, 631; and Fritz v. Fritz, Iowa, 148 N.W.2d 392, 397.

Returning again to the record we find plaintiff is remarried. His present wife has two children by a former marriage. They reside with their mother and plaintiff, the natural father having and exercising visitation rights at his election.

On the other hand, as aforesaid, John Phillip is defendant's son by a prior marriage, Alan Lee and Gerald Scott being sons of the parties to this action. At time of hearing on the modification application, John Phillip was 15, Alan Lee 12, and Gerald Scott 9.

As previously stated trial court, by the supplemental decree, committed John Phillip and Gerald Scott to the care of defendant, Alan Lee to plaintiff. For reasons heretofore set forth this arrangement cannot be approved.

Here we have two competing parents, each standing in about the same position with regard to pre-divorce conduct, both presently suitable to have custodial rights.

Actually the only disturbing post-divorce fault manifested by the parties hereto is that each has, on occasion, spoken disparagingly of the other in the children's presence. This can be nothing less than detrimental to the boys, and will be neither approved nor condoned by this court. See Thein v. Squires, 250 Iowa 1149, 1162, 97 N.W.2d 156, and Shepard v. Gerholdt, 244 Iowa 1343, 1347, 60 N.W.2d 547. It would be in order for counsel to accordingly advise their respective clients.

■ We are satisfied defendant is entitled to have custody of John Phillip despite the fact he was adopted by plaintiff. To that extent trial court's decree is affirmed.

This then leaves to be determined the matter of custodial rights with regard to the other two boys.

When living together they and their half brother got along well. This is of some significance.

And as heretofore stated, we will, if possible, avoid a divided custody of Alan Lee and Gerald Scott, full brothers.

In urging the boys be committed to his custody plaintiff, as heretofore noted, points to pre-divorce conduct by defendant.

However, that is balanced by evidence of plaintiff's improprieties at or about the same time, coupled with evidence to the effect his reputation for general moral character is bad. Additionally it appears the present Mrs. Wells has sometimes joined him in the practice of downgrading defendant-mother in the presence of the children.

Be that as it may, plaintiff argues custody should not be accorded an adulterous mother. In support of this position he leans heavily on Harwell v. Harwell, 253 Iowa 413, 112 N.W.2d 868. But the factual situation presented in the cited case is far removed from that with which we are here confronted.

In Harwell, supra, the father, his parents and fiance were of good standing and unblemished character. As opposed to this the mother, guilty of adultery, had an illegitimate child, needed psychiatric care, was employed and kept the children at her place of work in an amusement park until late hours.

Looking now to Betzel v. Betzel, Iowa, 163 N.W.2d 551, 556, this court said: "While it is true we have frequently recognized a presumption that the mother is ordinarily best fitted to care for children of tender years, Patzner v. Patzner, 250 Iowa 155, 93 N.W.2d 55, this is not a strong presumption * * *." See also Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1086, 65 N.W.2d 366, and Maron v. Maron, 238 Iowa 587, 591–592, 28 N.W.2d 17.

In the case at bar the three boys here concerned have lived under a divided custody arrangement since the original decree.

Resultantly no problem is presented relative to removal of any of them from an established suitable home in which they have become adjusted and are happy, as in Betzel v. Betzel, supra, and Maikos v. Maikos, Iowa, 147 N.W.2d 879.

Furthermore, no showing is made which reveals disqualifying moral depravity, lack of affection for her children, or parental weakness on the part of defendant. In fact it appears she has been and is a good mother.

█ Holding as we do, Alan Lee and Gerald Scott should not be separated, a balancing of all factors involved leads us to conclude, as in McKay v. McKay, 253 Iowa 1047, 1053, 115 N.W.2d 151, 154: "Though it is probably true there is no ideal situation for these children, * * * their interest will be best served by placing them in the custody of their mother where the responsibility for their well-being and discipline will be in one person and each will be subject to the same discipline as well as receive the benefits of association with each other."

In support of this conclusion see also Beno v. Beno, Iowa, 149 N.W.2d 778, 783–784; Schildgen v. Schildgen, Iowa, 148 N.W.2d 629, 631; and Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 1403, 121 N.W.2d 216.

To the extent trial court's decree holds other than as aforesaid, it is hereby modified.

IX. Attendant upon and coupled with the foregoing is the matter of support money. Stated otherwise, where child custody is accorded the mother, that and support ordinarily go hand in hand. So with regard to the latter, no change of circumstance showing was here essential.

By the original decree, entered March 31, 1965, plaintiff was required to pay $66.66 to defendant every month for support of each child.

Four years have since elapsed, and in Brophy v. Iowa-Illinois Gas and Electric

Co., 254 Iowa 895, 899, 119 N.W.2d 865, we accorded recognition to the constantly diminished purchasing power of the dollar.

Furthermore, the record discloses plaintiff is not only financially able, but under established principles required to reasonable contribute to the financial needs of his children. On the other hand defendant has little or no independent resources. Chapter 252A, Code, 1966, and section 598.-14. See also Beasley v. Beasley, Iowa, 159 N.W.2d 449, 451.

■ Under existing circumstances it is apparent defendant is now reasonably entitled to a child support judgment against plaintiff in the sum of $100 per month for each of the three children, until each child respectively shall attain the age of 18, or shall sooner become emancipated, marry, or die.

Trial court's decree is accordingly modified.

X. It still remains plaintiff-father is entitled to reasonable child visitation privileges.

By the supplemental decree trial court provided such rights be exercised interchangeably. For the most part the boys were thereby even more extensively separated one from the other. This could not, in any event, be approved.

■ Moreover, our holding, supra, as to custody, compels a complete revision regarding visitation by the boys with their father. Since the children's best interests, and relative convenience of the parties hereto, are unavoidably involved in this matter, trial court is probably in the best position to determine the times when and the conditions under which such visitations should be permitted. Trial court's supplemental decree shall be accordingly modified, avoiding anything tantamount to a divided custody.

XI. Next to be considered is defendant's claim to the effect she should have been awarded additional allowances for alimony and property settlement.

She predicates this stand on alleged fraud and coercion by plaintiff relative to execution of the pre-divorce stipulation.

In that regard defendant contends her settlement with plaintiff was based upon a false financial statement presented by him, and his coercive tactics.

The stipulation here involved was executed by plaintiff and defendant March 30, 1965, the divorce having been granted the next day.

Among other things the agreement provided:

"(c) Plaintiff shall pay the defendant the total sum of $8,200.00, payable as follows:

"$500.00 on May 1, 1965, and

"$500.00 on September 1, 1965, and

"$200.00 on April 1, 1965 and on the first day of each month thereafter, for a period aggregating 36 months, for a total sum aggregating $7,200.00."

Judgment was accordingly entered.

Plaintiff has regularly made payments pursuant to the terms of the agreement.

Trial court held, in the original decree, no alimony be allowed defendant, a property settlement only being awarded. But under existing circumstances there is no need for us to here resolve any issue between alimony and property settlement. See however Knipfer v. Knipfer, 259 Iowa 347, 353–354, 144 N.W.2d 140.

■ As best we can determine, all benefits to which defendant was entitled by virtue of the above quoted provision of the original decree have been delivered to and received by her. Absent any claim of fraud or irregularity, this would serve to close the door to any attempt on her part to secure the subject modification. That

issue was settled in Utter v. Utter, Iowa, 155 N.W.2d 419, 421.

However, in connection with the modification proceedings with which we are here concerned, defendant attempts to secure a partial vacation of the original decree upon the basis of the aforesaid fraud and duress. See in this regard rules 252 and 253, R.C.P.; Cook v. Cook, 259 Iowa 825, 829–831, 146 N.W.2d 273; Sorenson v. Sorenson, 254 Iowa 817, 824–825, 119 N.W.2d 129; and Scheel v. Superior Mfg. Co., 249 Iowa 873, 882–886, 89 N.W.2d 377.

By the supplemental decree trial court found the parties hereto, with their respective able counsel, met March 30, 1965, and devoted most of that day in negotiating the terms of a proposed stipulation.

At that time defendant and her then retained attorneys had benefit of a financial statement previously submitted by plaintiff, which defendant now claims was incompatible with a like instrument later secured. But the former listed only the purchase prices of real estate held, with liabilities disclosed, while the latter set forth optimum values, for loan purposes, with no offsetting obligations shown. This, in large part, explains any apparent variance in the two statements.

Furthermore, plaintiff and defendant were then understandably in an emotional state of mind. On two occasions they conferred privately. Defendant contends plaintiff, during the second of these conferences, threatened to "ruin" her if she did not agree to the terms of the then proposed stipulation.

Subsequently defendant consulted her attorneys. They recommended she approve the settlement. It took about an hour and a half to prepare the agreement, later signed by both parties with counsel present.

■ A vacation of judgment issue is tried as an ordinary action to the court and is not reviewable de novo on appeal.

■ Trial court found absence of proof to sustain the claimed fraud and duress. The record sufficiently supports that finding. See Cook v. Cook, and Sorenson v. Sorenson, both supra.

On the issue at hand we affirm.

XII. This brings us to trial court's challenged order adjudging defendant to be in constructive contempt of court. See section 598.15, Code, 1966.

No issue was taken as to any procedural phase of the contempt proceedings, defendant arguing only, the findings are not supported by the record.

Code section 665.11, provides: "No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari."

But in Harkins v. Harkins, 256 Iowa 207, 210–211, 127 N.W.2d 87, we held, a contempt order incident to a divorce proceeding, may be reviewed on appeal of the case. And, as disclosed in Huston v. Huston, 255 Iowa 543, 549, 122 N.W.2d 892, 896: "The cause is not triable de novo here but the [contempt] judgment does not have the full force and effect of a jury verdict. While we give weight to the trial court's findings we are not bound by them. Citations last above and precedents therein cited; Critelli v. Tidrick, 244 Iowa 462, 472, 56 N.W.2d 159, 165, and citations; Mason v. District Court of Blackhawk County, 209 Iowa 774, 776–777, 229 N.W. 168, and citations.

" 'It is for this court to say, having due regard for the findings below, whether the contempt has been clearly and satisfactorily shown' (citations). Harding v. McCullough, 236 Iowa 556, 558, 19 N.W.2d 613, 615."

We find the challenged contempt has here been clearly and satisfactorily shown.

September 1966, defendant refused to return John Phillip and Gerald Scott to

plaintiff as required by the supplemental decree.

Defendant's only apparent explanation is, the boys did not want to go with plaintiff. But there is evidence the mother, at least indirectly, contributed to this situation and in any event did little or nothing to effect a correction.

Trial court's supplemental decree provided, in relevant part, as punishment for her contumacious conduct, defendant be confined in jail for five days, mittimus to be withheld until further order.

Subsequent show cause proceedings revealed defendant again on July 12, 1968, wilfully failed or refused to surrender custody of these boys to the father. It was thereupon ordered the mittimus issue.

Execution of the contempt judgment was stayed by us pending review on appeal.

Holding as we do the record clearly discloses defendant wilfully disobeyed trial court's decree, there is no basis upon which to here reverse.

However, that does not mean entry of an order by trial court, on remand, conditionally withholding or withdrawing any order for issuance of the aforesaid mittimus, would be looked upon by us with disfavor.

XIII. Defendant has requested an additional allowance of $5,034.77 attorney's fee and incidental expenses incurred by counsel in connection with this appeal. An itemized statement discloses substantial time devoted in this direction.

Defendant is hereby allowed a fee of $3000 in addition to any fees heretofore awarded, to be paid by plaintiff for legal services performed, and expenses incurred by defendant's attorney in the instant appellate proceedings. See in this regard Schantz v. Schantz, Iowa, 163 N.W.2d 398, 407.

XIV. In effecting this appeal and cross-appeal the parties hereto have caused to be filed an abstract of the record consisting of 1144 pages. The respective briefs are accordingly overladen with references to pages and lines of the voluminous record. Responsibility for this cannot now be definitely determined. However, it has contributed to unnecessary expense, at the same time making our task all the more difficult.

Costs on this appeal are taxed three-fourths to plaintiff, one-fourth to defendant.

Affirmed in part, reversed in part, modified in part, and remanded.

All Justices concur.