James **CAREY**, Appellant,

v.

Judy **CAREY**, Appellee.

No. 55980.

Supreme Court of Iowa.

Oct. 17, 1973.

■■■■■■■

Jones, Cambridge, Carl, Feilmeyer & Landsness, Atlantic, for appellant.

Harold G. DeKay, Atlantic, for appellee.

Heard before MOORE, C. J., and REES, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

Petitioner husband (James Carey) appeals from provisions of a dissolution decree including those granting his respondent wife (Judy Carey) custody of their four children. We affirm in part, reverse in part, and remand.

James and Judy were married in 1959. Their four children are John, age 11; Robert, age 9; Timothy, age 7; and Susan, age 6. James has been an Iowa State Highway Commission employee for 15 years. He is a registered land surveyor and heads a survey crew. His supervisor testified he did excellent, conscientious work and had opportunity for further promotion.

James pinpointed 1969 as the inception of the marriage breakdown. Judy attended a class reunion and met an old boy friend whom she then started to date, staying out as late as 2:30 A.M. James testified Judy told him "Herb" was the only one on her mind. This was undenied by Judy and corroborated by her testimony.

A careful study of the record, however, persuades us some marital problems commenced as early as 1967. Judy testified James then began to do more of the housework, laundry and cooking. She said, "I was having my problems. He just took over and didn't give me time to work mine out." James put the children to bed. She testified unconvincingly about his beer drinking, and said he "evidently" did not demonstrate enough affection toward her.

On July 3, 1968, she first consulted Dr. Karl Catlin, Director of the Mental Health Center for Southwest Iowa. Testifying for Judy, this witness related the history he obtained on this occasion. Judy told him she was in conflict with her children and unable to enjoy marital relations with her husband. She described her husband as very patient, kind and understanding. She became tired "during the end of the day making it difficult for her husband during the evening." James' good qualities made her feel inferior and guilty. She indicated a desire to get out of the house and become involved in outside activity. They were never able to go anywhere because of their financial condition.

By the second consultation this doctor diagnosed Judy's condition as a "reactive depression," resulting from her feelings about her marriage. He also conferred with James whom he described as having a deep and abiding interest in making the marriage "go." Dr. Catlin testified Judy's condition would not interfere with her ability to "cope" with the children. According to Dr. Catlin she improved after moving to another residence in October 1971. He prescribed "Nortramine," an anti-depressant drug. At trial time Judy testified she was taking four pills a day and was dependent on them.

At some unspecified time not distant from her first consultation with Dr. Catlin, Judy (over her husband's protest) took employment as a store clerk. She was still so employed when this case was tried. The younger children who were not in school were placed in a day-time child care center.

In January 1970, these parties tried a trial separation during which Judy continued to see Herb. He visited at her home where she kept the children. The following March, James and Judy attempted reconciliation with a trip to Wyoming to visit

a relative. Judy did not dispute James' testimony that the first day he returned to work after the trip she met Herb. They decided she did not want anything to do with James and she asked him to leave, which he did. In October of the same year James returned to the home but they had no marital relations thereafter.

Judy continued to go out with Herb and other men. James continued to do the housework, cook meals, and supervise the children and their activities. She eventually brought a dissolution action. On July 15, 1971, the district court denied her petition. Upon learning of the ruling, Judy said, "No court is going to tell me who to stay with or what to do." Her appeal to this court was dismissed when it was not prosecuted as provided by our rules.

This action was commenced by James in August 1971. Judy counterclaimed. She moved out of the house with the children in October 1971; however, James has seen them on a daily basis since then. He frequently keeps them overnight. He takes them to church, and the boys to cub scouts and little league. He plays with the children. He attends parent-teacher conferences to discuss the children's progress. James testified Judy does none of these things. She did not refute this evidence. On cross-examination she characterized James as a good husband, but added, "he was probably domineering." She admitted James was a religious, responsible person who loved the children very much and spent a lot of time with them.

James testified Judy told him the children would rather be with him. This was not disputed, nor was his further testimony that a week before trial she related problems with the children and asked him to take them.

Judy's hours as a store clerk are 9:30 A.M. to 5:00 P.M. on Monday, Tuesday and Wednesday; and 9:30 A.M. to 9:00 P.M. on Thursday and Saturday. James' hours are from 7:45 A.M. to 4:45 P.M. five days per week. He testified if he were given custody of the children he would, during his working hours, keep them in school or in the same child care center they had been attending until he could find someone to come into the home on a daily basis.

In August 1972, trial court entered an amended and substituted decree. It inferentially awarded Judy custody of the four children and ordered James to pay $260 per month child support. Judy was awarded the furniture and personal property contained in the home except for James' clothing, jewelry and personal pictures. She was also given possession of the home (with the obligation to pay the insurance, taxes and mortgage installments, and make necessary repairs) until the last remaining child attained 18 years of age, was married or became emancipated by law. Then the home was to be sold and the net proceeds divided equally between these parties. Provisions of the decree relating to attorney fees, costs, and other matters do not concern us here.

James raises two issues for review. First, he asserts trial court should not have awarded custody to Judy when the evidence demonstrated he, not Judy, was better able to care for the children and in fact had done so. Second, James argues trial court applied an unconstitutional inference in favor of the mother in arriving at the custody decision. He does not challenge the reasonableness of any of the property or child support provisions of the decree in the event the decree is sustained on the custody question.

We have not been furnished a brief on behalf of Judy.

I. We consider the last issue first. Trial court made no findings relating to the suitability of either party to have custody, nor gave any reasons for its decision with respect to the children. It made no direct custodial order: only by virtue of the child support and visitation provisions may it be deducted Judy was granted custody. Thus there is nothing in the decree

to show trial court's decision turned on the inference James attacks, although the dearth of evidence to otherwise support the ruling makes his deduction plausible. In any event, our view of the case does not require us to pass on the constitutional question.

■ II. Our applicable rules in this situation are well settled. In all child custody cases our first and governing consideration must be the best interest of the child. Rule 344(f)(15), Rules of Civil Procedure.

■ We have consistently said a child's custody is not to be granted or withheld from either parent as reward or punishment. In re Marriage of Bare, 203 N.W. 2d 551 (Iowa 1973); In re Marriage of Forest, 201 N.W.2d 728 (Iowa 1972).

■ Assuming its constitutionality, the inference that the best interest of younger children is served by placing them in a mother's care yields readily to evidence tending to show otherwise. Jones v. Jones, 175 N.W.2d 389 (Iowa 1970). The strength of the inference has been diluted by our recent cases. Miller v. Miller, 202 N.W.2d 105 (Iowa 1972); Fritz v. Fritz, 260 Iowa 409, 148 N.W.2d 392 (1967); Harwell v. Harwell, 253 Iowa 413, 112 N. W.2d 868 (1962).

In Kayser v. Kayser, 164 N.W.2d 95, 103 (Iowa 1969) we said:

"There is no hard-and-fast rule as to which parent or other person should be awarded a child's custody. Each case must be judged on its own facts."

■ Finally, in referring to guiding principles, we have repeatedly said no court should separate brothers and sisters, one from another, absent good and compelling cause. Jones v. Jones, supra; Wells v. Wells, 168 N.W.2d 54 (Iowa 1969).

The evidence in this case, summarized above and largely undisputed, is not in such equipoise as to warrant application of the above described inference. The record is simply inadequate to sustain trial court's custodial decision. Aside from Judy's dutiful affirmative responses to questions posed by her counsel relating to her love for her children and her desire to have them with her, there is an almost total void of evidence to show her avowed love and concern for them. If anything, the evidence indicates her inclination to pursue her own course during her off-work hours rather than meet the demanding duties of a good parent.

■■ On the other hand, the record is replete with specific proof of James' affection and concern, and his dedication to the children's best interest. We note his conscientious efforts to further their church attendance and religious education. This is a permissible consideration. McNamara v. McNamara, 181 N.W.2d 206 (Iowa 1970); 24 Am.Jur.2d, Divorce and Separation § 787, p. 894. He enjoys being with the children, and they with him. He has taken a sincere interest in their welfare and activities and every indication points to his ability to provide a stable, wholesome living environment for all four.

We therefore remand for entry of a modified decree incorporating the following changes from the provisions in the decree appealed from:

1. Custody of all four children shall be awarded the father, James Carey.

2. The mother, Judy Carey, shall be granted the right to visit such children at all reasonable times and places.

3. James Carey shall be promptly restored to possession of the real estate so that he may use it in making a home for the children. During such occupation he shall pay the taxes, insurance and mortgage installments and make necessary repairs. If he ceases to use the property as a home for the children, or in any event when the last remaining child shall attain the age of 18, is married, or becomes

emancipated by law, this property shall be sold and the net proceeds, representing the equity of these parties, shall be divided equally between them.

4. The personal property in the home in August 1972 when it was vacated by James Carey, with the exception of any clothing, personal jewelry or personal pictures belonging to Judy Carey, shall be restored to and become the property of James Carey.

5. Judy Carey shall not be awarded alimony.

All other provisions of the decree appealed from are affirmed. Costs of this appeal are taxed to the appellant James Carey.

Affirmed in part, reversed in part, and remanded.